All right, Mr. Wallace we'll hear from you first. May it please the court, my name is Greg Wallace and I represent Jason Bowers in this Social Security Disability Appeal. This case is about whether an ALJ's discounting of a treating specialist opinion should stand when she misread or misrepresented the record on three significant points about that opinion and instead relied on the opinions of doctors who never examined Bowers, who reviewed only four out of 20 of the treatment notes and never saw a single objective x-ray report. Now Mr. Bowers is unable to return to work primarily due to the effects of ankylosing spondylitis which is a severe progressive disease. We have set out a rather long quote from the Mayo Clinic describing that disease in our main brief. The ALJ's finding that Mr. Bowers can perform a wide range of light work is contradicted by the opinion of Bowers' treating rheumatologist Dr. Majewski. The ALJ adopted only Dr. Majewski's environmental limitations contrary to Dr. Majewski's opinion. The ALJ found that Bowers has no limitations in sitting, standing, or walking, no need for a sit-stand option, no fatigue that robs him of the stamina to work eight hours a day, five days a week, no medication side effects, no need for frequent rest periods longer than or longer than normal breaks, and no limitations in reaching, handling, and fingering. Judge Koba said, will you remind me, did the ALJ adopt some of the treating physician's limitations? Am I correct in that, in my recollection? Yes, the environmental limitations, your honor. And which ones were those? Those were having to do with his exposure to certain environmental entities or limitations. Let me... You know, that's fine. I'd rather you proceed with the arguments. I just wanted to clear that up. Thank you. The point here is that there were no of the... The ALJ did not adopt any of the treating specialist exertional limitations or postural limitations or limitations relating to non-exertional issues that go to his ankylosing spondylitis. Now, there are two key factors under the commissioner's current regulations that ALJs must consider in assessing a doctor's opinion. Those are supportability and Dr. Majewski's physical examinations were routinely normal, except for the Schober's test, which denotes decreased lumbar spine flexion. But the ALJ, that's just not correct. The ALJ never mentioned that there were two additional findings on physical examination, limited lateral rotation in the entire spine, decreased chest expansion, which sometimes happens with AS patients when there is a fusion or the bones begin to grow together in their spine. The ALJ never mentioned the positive... The lab work that was ordered by Dr. Majewski, there was a positive. It was positive for an elevated SED rate. It was positive for an elevated C reactive protein, and it was positive for the HLA-B27 antigen, which is present in about 90% of AS patients. Also, the ALJ never mentioned that the September 2018 x-rays that were ordered by Dr. Majewski showed fusion across the C56 disc space and a possible fusion of the lumbar SI joint. Dr. Majewski's opinion also was consistent with the patient complaints. Mr. Bowers indicated on multiple occasions that he suffered from moderate to severe pain in his back, neck, and his shoulders. He had severe fatigue, and he had early morning stiffness. Also, Dr. Majewski's treatment is consistent with her opinion. She prescribed strong pain medications. There is really no surgery or cure for ankylosing spondylitis. As to the consistency element, the ALJ found that Dr. Majewski's opinion was inconsistent with Dr. Fletcher's physical examinations and also inconsistent with x-ray findings that showed no fixation of vertebrae in Bowers' lumbar spine. Well, as to Dr. Fletcher, the ALJ said that Dr. Fletcher routinely observed that Bowers had normal findings related to his spine. But if you look at those records carefully, Dr. Fletcher, who was Bowers' primary care provider, saw Bowers on eight occasions. Only on one occasion did his exam include a musculoskeletal assessment. There were no such assessments on any of the other occasions. On that one occasion that he did perform a musculoskeletal assessment, Dr. Fletcher noted decreased range of motion in spinal flexion, extension, and rotation. Again, the ALJ has misrepresented the record in that respect. The ALJ also misread Dr. Majewski's opinion when she claimed that Dr. Majewski noted a fixation in Bowers' lumbar spine to support her opinion. That's not what Dr. Majewski said in her medical source statement. The ALJ misread the term flexion for fixation. What would fixation mean? I think fixation would mean a fusion of the spine where the spine is fixated because it is fused, which is a characteristic of ankylosing spondylitis. When new bone growth, these osteophytes grow from one vertebra to another, and they attach. Then the vertebra are fused in that way in the spine. There was an x-ray showing fusion in the cervical part of the spine, which is the upper part of the spine. We agree that the x-ray was not conclusive about fixation in the lumbar part. The radiologist said there could be fixation there. Of course, it could also be bowel gas overlay. Dr. Majewski never claimed that there was a fixation in the lumbar spine. For the ALJ to use that reason as a reason to discount or discredit Dr. Majewski's opinion is simply not Dr. Majewski on her own exams, as to the examination findings of Bowers' PCP, Dr. Fletcher, and as to Dr. Majewski's claim regarding the fixation in the lumbar spine. The ALJ also relied on opinions of state agency doctors. These agency-paid doctors never examined Bowers. They reviewed an extremely limited set of medical records, just four treatment notes from the almost 20 in the entire record. Council, is your argument that any reliance on those doctors is not appropriate, or there was over-reliance here? I think the ALJ's decision to credit their opinions over that of the treating rheumatologist in this case is simply not supported by substantial evidence in the record, because these doctors were not properly informed of what was going on in the record. So it's over-reliance, is that right? Yeah, I think the ALJ could consider those records, but it is over-reliance, certainly. I don't think the ALJ should have given more weight to those than to the opinion of Dr. Majewski. And you agree, of course, we don't owe deference anymore to the treating physician, right? Exactly. I mean, it goes without saying, but yeah. Yeah, it's the sort of consistency, yes. Yes. I'll say that at the same time. Yes, very well. Thank you. All right, very well. Thank you for your argument. Ms. Jones, we'll hear from you. Thank you, Your Honor. Good afternoon. My name is Danielle Jones. I represent the Acting Commissioner of the Social Security Administration in this case. And in this case, the ALJ properly reviewed this decision under the new framework for the evaluation of medical opinion evidence and properly found that Dr. Majewski's opinion was not supported nor consistent with the objective medical evidence, therefore finding that it was only partially persuasive. Now, I'd personally like to address some of the things that Mr. Wallace has brought up in his argument. With regard to supportability, he argues that the ALJ misconstrued the physical examinations that Dr. Majewski conducted of Bowers, but that is not the case. The physical examinations do largely show normal physical examination findings, aside from a positive Showbert's test, which is an indication of reduced lumbar flexion. The physical examinations of Dr. Majewski show largely normal neurological findings. They show that he had no tenderness of palpitation in his SI joints. They also indicate that he had a negative straight leg raise. And additionally, he appeared in no acute distress, despite telling Dr. Majewski that he was reporting pain of seven, which would indicate that he would have some kind of distress visible to Dr. Majewski. So, the supportability is simply not there with Dr. Majewski's opinion. It is not supported by her physical examinations of Bowers. It's also not supported by her largely routine and conservative treatment of Bowers. Her treatment records typically show follow-up in six months, continue on pain medication. If Dr. Majewski truly believed that Mr. Bowers was disabled, it will be reflected in her treatment. There will be more aggressive treatment, more frequent visits, frequent medical changes of medication or increasing dosage, and that's simply not there in this case. And also, I would like to say that Dr. Majewski only had been treating Mr. Bowers for a few months when she made this opinion. So, she did not have a long-standing treatment relationship that lasted years with Mr. Bowers. And also, I want to just next talk about how Mr. Bowers focuses on the diagnostic lab work, which the AOJ did acknowledge this diagnostic lab work in her decision. And additionally, whether or not this diagnosis lab work is irrelevant because the AOJ did find ankylosing spondylosis to be a severe impairment. So therefore, the focus should not be on the diagnostic lab results. The focus should be on the functional limitations as a result of this impairment. And in this case, the functional limitations simply are not there, not just by Dr. Fletcher's examinations of Dr. Fletcher as well as a cardiologist. In this case, Dr. Fletcher's examinations do show that Mr. Bowers had a normal gait, Mr. Bowers had normal strength, Mr. Bowers had normal motor strength, and no sensory deficits. These just fail to show the functional limitations that Mr. Bowers is alleging. And also, what fails to show it is that he has indicated to Dr. Fletcher on his primary care physician that he had a zero pain score, which greatly contrasts with his allegations of disabling pain if he's telling his primary care physician that he has only a pain score of zero. And additionally, the AOJ did not misconstrue the objective medical testing on this case. It is true that the x-ray of the lumbar spine showed an essentially normal spine. It was inconclusive with regard to the SI joints. But however, there is an x-ray in this case of the pelvis where the SI joints are located, and that x-ray showed bilateral arthritis with no erosions or ankylosing. And additionally, there is an x-ray of Mr. Bowers' thoracic spine, which showed only mild ossification with no acute fracture. So therefore, the objective medical evidence was not mischaracterized by the AOJ in this case. It just simply doesn't support Mr. Bowers' allegations. And in addition to the physical examinations and the objective medical evidence, there is also several other strong factors in this case that this court has held as evidence to constitute a finding of non-disability. First, Bowers has been encouraged by Dr. Majewski as well as his primary care physician to engage in exercise, which constitutes a finding, supports a finding or of ability to do light work. And additionally, Mr. Bowers has reported the ability to do a wide range of activities of daily living. He has reported that he cared for his minor son, he cared for his dog, he cooked meals, he did housework, he did yard work, he fished with his dad, he hung out with friends, he left his house daily, he drove. In fact, he drove over an hour to attend his hearing in front of the AOJ. These are all findings that this court has held constitute a finding of light work. And additionally, there is another very strong factor in this case. Mr. Bowers has a 20-year, over 20-year at this point, history of ankylosing spondylosis. And he has worked with that impairment for over 20 years and there is absolutely no evidence in this record that there was any kind of deterioration of that impairment. So the fact that he was able to work for over 20 years with this very same impairment with no deterioration is something that is also significant and supports that the AOJ's opinion supported by substantial evidence. And lastly, I would like to also mention that Dr. Majewski submitted her opinion on a checkbox form. A checkbox form in its very inherent design invites skepticism and that's even more valid now because checkbox opinions have no supportability and supportability is such a very strong factor under the new framework for medical opinions. And a checkbox form like Dr. Majewski's has lacked substantial supportability, so it's therefore that it should be disregarded in this case, along with the other factors. Counsel, I don't know if you're the one to ask this question of, but the checkbox form seems to be something that's bantered about as a reason to disregard various doctors. Where do most of those come from? Does the Social Security Administration supply any of those forms for the types of questions that need to be answered in these situations or do they come from attorneys offices? And if you don't know, that's fine. I used to be a decision writer. Based on my experience, I think that they come from the attorney's offices. We provide application materials, function reports, and things like that, but we do not provide medical opinion forms. You think the attorneys need to change to short answer format under the new regs? We'll ask Mr. Wallace about that. And lastly, I just want to also talk about the administrative findings from the state agency doctors. Mr. Wallace keeps saying that the ALJ overly relied on these opinions, which he did not. Now, in my 28J letter to the court, I mentioned how this court just last week found in rejecting a similar argument made by Mr. Wallace in that case as well about claiming that ALJ over relied on state agency administrative findings instead of the opinion of the medical provider. And in the case that I sent in my 28J, this court found that an ALJ has the right to consider both decisions. And in this case, just like in the Pierce case, the ALJ did not adopt either of the decisions. He took some stuff, she, I mean, took some stuff from the state agency doctors and as well as from Dr. Majewski. She did not overly rely on the state agency opinions at all. She took, like I said, she, and also I wanted to say that state agency opinions are, should be properly considered by the ALJ because they are experts in disability case evaluation, which the ALJ properly did in this case. And also too, with regard to the state agency, he mentioned how they didn't review the whole record. This case did not span years. It was only a year and a half period. There's not a lot of medical evidence. So it's not like they missed a whole bunch of information. This is a little record that only takes place within a little over a year. So them not having the whole record when they made the administrative finding is not a detriment in a case like this, with such a short record. So in conclusion, I would say because there are substantial evidence to support the ALJ's decision under the greatly deferential standard, the court should affirm the acting commissioner's decision. Thank you for your time and attention. Thank you, Ms. Jones. Mr. Wallace, we'll hear from you in rebuttal. Thank you, your honor. A number of the findings that the commissioner now relies on, which by the way, were not relied on by the ALJ in actually making her decision, which raises a Chenery doctrine question, but a number of those are not diagnostic of ankylosing spondylitis, particularly this acute distress. We've litigated that before. That doesn't mean what I think the commissioner thinks it means at this point. The checkbox form, I see my time has expired. May I comment briefly on the checkbox form? Yes. Okay. Thank you, your honor. The checkbox form is something that's used by the commissioner in when it sends out claimants to consultative examiners and it often sends those checkbox forms to return to the agency. Plus, if you look at the non-examining state agency doctors, they have checkbox forms as well. There's very little input on those forms too. So what's sauce for the goose, I suppose, is sauce for the gander. If you're going to discount a treating doctor's opinion, when that treating doctor has provided a lot of additional notations, medical records and everything, then I think that should be applied in the same way against the state agency doctors. Thank you, your honor. But you're not saying that this checkbox form, the Majewski, however you say that, filled out, was provided by the commissioner, are you? No, I'm not saying that, but there's... You're saying the commissioner, you think, uses checkbox forms in other contexts, but... Yes. Does the record show where this form came from? Does the doctor keep them on hand, or did it come from counsel, or is the record just silent on that? I think they typically come from counsel, but there's authority in this court's opinions. We mentioned in our reply brief that really it's not just the checkbox form, but the entire medical record that should be considered, including all of Dr. Majewski's treatment notes. Okay. Thank you, your honor. Seeing no other questions, I think we will conclude the argument then. Thank you both, counsel, for your presentations today. The case is submitted. The court will file a decision in due course. Thank you. Thank you, your honors. Very well. That concludes the argument session for this afternoon.